The Full Commission has reviewed the prior opinion and award based on the record of the proceedings before Deputy Commissioner Richard B. Ford and the briefs and oral arguments on appeal. Based on their assignments of error, defendants have not shown good ground to reverse the prior Opinion and Award. On his appeal and based on his assignments of error, plaintiff has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
**********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 22 May 1996 as:
STIPULATIONS
1. At the time of the alleged injuries giving rise to these claims, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At such times, an employment relationship existed between plaintiff and defendant-employer.
3. At such times, GAB Business Services was the carrier on the risk.
4. An Industrial Commission Form 22 Wage Statement has been stipulated into evidence.
5. The medical records of Doctor's Urgent Care, consisting of 4 pages and marked as stipulated exhibit 1, has been received into evidence.
6. A packet of medical records consisting of 40 pages is received into evidence.
7. The deposition of Dr. James E. Rice of the Sandhills Orthopaedic and Spine Clinic, taken on 4 September 1996 and consisting of 30 pages with attached plaintiff's deposition exhibit 1, has been received into evidence.
************
Based upon the evidence of record, the Full Commission finds as follows:
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 38 year old male who completed the tenth grade of high school.
2. Plaintiff's prior work experience includes maintenance and various construction jobs.
3. Plaintiff first became employed with defendant-employer as a last puller on 24 October 1977. In 1985, plaintiff was laid-off from his position with defendant-employer and re-hired on 7 February 1991. Plaintiff's average weekly wage was $379.91, yielding a compensation rate of $253.29.
4. As part of plaintiff's duties as a last puller, plaintiff was required to place metal last "foot molds" into a basket which was then placed into a buggy and transported to the assembly line. On an average a basket could hold between 50 and 60 lasts, weighing on an average 50 pounds.
5. On 19 April 1994, plaintiff was in the process of unloading the buggy and picked up a basket of lasts and placed them on the floor. During the process of placing the basket on the floor, plaintiff felt pain in the right side of his lower back located at, or near, his belt-line. Plaintiff experienced sharp pain in his back radiating down his right leg.
6. Plaintiff reported the incident to his foreman who in turn provided plaintiff with a note to report to the company nurse. Plaintiff reported to the company nurse and reported low back pain. The nurse's notes reflect that plaintiff noticed the pain when he began working on the morning of April 19th. The notes further reflect that plaintiff denied any injury. The company nurse applied heat to plaintiff's back and since plaintiff was unable to resume his duties he was sent home for the remainder of the day.
7. On 21 April 1994, plaintiff presented himself to Doctor's Urgent Care in Lumberton, North Carolina. Plaintiff complained of tenderness in his low back which began on 19 April 1994 at work. Plaintiff was diagnosed as having a lumbar strain, was provided medication and told to return to work on light duty.
8. Plaintiff returned to Doctor's Urgent Care on 25 April 1994 and 29 April 1994.
9. On 3 May 1994, plaintiff returned to work with defendant-employer and resumed his regular duties.
10. On 16 May 1994, plaintiff was picking up a basket of lasts when he felt pain in the left side of his lower back with radiating pain down plaintiff's left leg. Plaintiff experienced no pain in the right side of his back or pain radiating in his right extremity.
11. Again plaintiff reported the incident to his foreman and again was provided a note to report to the company nurse. Once again the company nurse applied heat to plaintiff's lower back.
12. On 1 November 1994, plaintiff was seen again by the plant nurse with complaints of back pain. Plaintiff associated his pain in November as having continued since 19 April 1994.
13. Plaintiff continued to perform his regular duties from 3 May 1994 up and through the defendant-employer's Christmas break.
14. On 2 January 1995, plaintiff returned to work and after working a few hours reported to his foreman that he could no longer take the pain. Plaintiff last worked for defendant-employer on 2 January 1995.
15. Plaintiff presented himself to Dr. Veda N. Thakur of Lumberton. Dr. Thakur recommended that plaintiff undergo an MRI. Plaintiff's MRI revealed a central herniated disc at L4-L5 and L5-S1 with left lateral recess encroachment at L4-L5 and right neural foramen encroachment at L4-L5 and L5-S1.
16. Upon the advise of his attorney, plaintiff was seen by Dr. James Rice on 21 February 1995. Plaintiff came under the care of Dr. James Rice of the Sandhills Orthopaedic Clinic.
17. On 21 March 1995, plaintiff underwent a left L4-5 diskectomy performed by Dr. Rice. On 29 September 1995, plaintiff underwent a repeat L4-5 diskectomy.
18. It was Dr. Rice's opinion that when first seeing plaintiff on 21 February 1995, that plaintiff was not capable of performing his job duties.
19. It was further Dr. Rice's opinion that plaintiff reached the point of maximum medical improvement as of 4 September 1996 and retained a 20% permanent partial impairment to his back. Dr. Rice placed permanent restrictions of frequent change of position, limited bending/stooping and no lifting greater than 25 pounds. As of the date of the hearing of the above captioned matter, plaintiff remained unemployed.
************
Based upon the Findings of Fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 22 November 1991, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6)
2. As a result of his injury by accident on 22 November 1991, plaintiff is entitled to temporary total disability compensation at the rate of $371.57 per week, from 26 August 1992 through 8 August 1993. As a result of his injury by accident on 22 November 1991, plaintiff is entitled to temporary partial disability compensation at a rate of $158.22 per week, from 8 August 1993 and continuing thereafter week to week as long as plaintiff remains temporarily partially disabled. G.S. §97-30.
3. As a result of his injury by accident on 22 November 1991, plaintiff is entitled to payment by defendants of all medical expenses, including those expenses incurred by Dr. Daniel J. Miller for treatment to plaintiff's back to the extent that future treatment may be reasonably required to affect a cure or give relief, or will tend to lessen plaintiff's period of temporary partial disability, plaintiff is entitled to future medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatments. G.S. § 97-25.
************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $253.29 per week from 2 January 1995 through the date of this Opinion and Award and continuing thereafter as long as plaintiff remains temporarily totally disabled. Such amount that has accrued, shall be paid to plaintiff in a lump sum, subject to the counsel fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury by accident, when the same shall have been submitted through the Defendant-Carrier to the Industrial Commission and approved by the Industrial Commission.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the accrued amount due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER